UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ) | |
| ) | Bankruptcy Case No. 1:10-05235-MDF |
| RESIDENCE FOR RENAL CARE AT SHADYSIDE, ) | |
| LTD., ) | Chapter 11 |
| Debtor. ) | |
| _____ ) | Document No. |
| FIRSTMERIT BANK, N.A., Movant, ) | |
| ) | |
| v. ) | |
| ) | |
| RESIDENCE FOR RENAL CARE AT SHADYSIDE, ) | |
| LTD., ) | |
| Respondent ) | |
| ) | |
| _____ | _____ |
| | |
| IN RE: ) | |
| ) | Bankruptcy Case No. 1:10-05238-MDF |
| CENTER FOR RENAL CARE AT SHADYSIDE, ) | |
| LTD., ) | Chapter 11 |
| Debtor. ) | |
| _____ ) | Document No. |
| FIRSTMERIT BANK, N.A., Movant, ) | |
| ) | |
| v. ) | |
| ) | |
| CENTER FOR RENAL CARE AT SHADYSIDE, ) | |
| LTD., ) | |
| Respondent. ) | |
| ) | |
| _____ ) | |

**MOTION OF FIRSTMERIT BANK, N.A. TO TRANSFER VENUE OF THE DEBTORS'
BANKRUPTCY CASES TO THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN
DISTRICT OF PENNSYLVANIA PURSUANT TO 28 U.S.C. § 1408**

FirstMerit Bank, N.A. ("FirstMerit"), the primary secured creditor of the above-captioned debtors[1] (the "Debtors") and a party in interest herein, hereby moves this Court for entry of an Order

---

[1] The Debtors have filed an Application for Order Under Fed.R.Bankr.P. 105 for Joint Administration of Cases (See Doc. No. 8 at 1:10-BK-05238 and 1:10-BK-05235), but no order has been entered as of the filing date of this Motion. Therefore, Movant is filing the instant pleading in both bankruptcy cases. Additionally, each of the Debtors have filed a Motion to Extend Time to file Schedules (see Doc. No. 44 at 1:10 BK-05238 and 1:10 BK-05235). FirstMerit respectfully reserves the right to supplement or amend the within Motion and the request for relief upon review of the Debtors' completed Schedules.

{B0211222.1}

pursuant to 28 U.S.C. § 1408 and 1412, Rule 1014 of the Federal Rules of Bankruptcy Procedure and section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code") transferring venue of these chapter 11 cases to the United States Bankruptcy Court for the Western District of Pennsylvania where venue is appropriate under 28 U.S.C. § 1408. In support thereof, FirstMerit respectfully represents as follows:

## I.     FACTS

1. On June 24, 2010 (the "Petition Date"), the Debtors filed bankruptcy petitions pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Pennsylvania (the "Bankruptcy Court").

2. It appears that the basis for the Debtors' choice of venue of their bankruptcy cases in the Middle District of Pennsylvania is that the registered corporate address for each Debtor is 2933 N. Front Street, Harrisburg, Pennsylvania 17110, which is located in the Middle District of Pennsylvania. Upon information and belief, the building at 2933 N. Front Street houses a law firm owned and operated by one of the former or current equity holders of the Debtors, Louis J. Capozzi. Upon information and belief, Mr. Capozzi has not been involved with the daily operation of either of the Debtors for several years.

3. The Debtors have retained a law firm headquartered in Harrisburg, Pennsylvania, Cunningham & Chernicoff, P.C.

4. The Debtors own and operate a single nursing home facility which is located in Pittsburgh, Pennsylvania and the Debtors' principal place of business is in Pittsburgh, Pennsylvania. Copies of the first two pages of the Debtors' bankruptcy petitions are attached hereto as Exhibit "A" (the "Petition").

5. The mailing address stated on each of the Debtors' Petitions is 438 South Fairmount

{B0211222.1}

2

Case 1:10-bk-05235-MDF    Doc 45    Filed 07/09/10    Entered 07/09/10 14:36:59    Desc
Main Document    Page 2 of 13

Street, Pittsburgh, Pennsylvania 15232.

6. Upon information and belief, a majority of the Debtors' creditors are located in or around Pittsburgh, Pennsylvania.

7. Upon information and belief, all of Debtors' employees and their CEO are located in or near Pittsburgh, Pennsylvania.

8. None of the of gas, electricity or water utilities listed in the exhibit to Debtors' "Motion of the Debtor for Entry of Interim and Final Order Providing for Adequate Assurances of Payment for Future Utility Services" (the "Utilities Motion") are located in Harrisburg. In fact, all of the utility providers indentified by the Debtors are located in Pittsburgh (see Docket No. 5 at 1:10-BK-05238 and 1:10-BK-05235).

9. Neither of the Debtors own real property located in Harrisburg, Pennsylvania. The real property where the Debtors operate their business is located in Pittsburgh, Pennsylvania.[2]

10. Upon information and belief, The Debtors' books and records are located in Pittsburgh, Pennsylvania. The employees and witnesses who can and would authenticate, explain, and produce the same, also located in Pittsburgh, Pennsylvania.

11. The Debtors are currently defendants in eleven (11) state court proceedings that have been filed in the Court of Common Pleas of Allegheny County, which is located within the jurisdiction of the Western District of Pennsylvania. As of the Petition Date, the Debtors have no litigation pending in any other county in Pennsylvania.

---

[2] Upon information and belief, neither of the Debtors own any real property. Rather, the Debtors operate their business out of a property which they lease from a related entity and co-obligor of the debt owed to FirstMerit, Innovative Healthcare Properties, LLC. By way of further answer, on June 9, 2010, FirstMerit initiated an action in Mortgage Foreclosure against Innovative Healthcare and the Pittsburgh real property which action is filed in the Court of Common Pleas of Allegheny County, Pennsylvania at GD 10-11144 which Court is also located in Pittsburgh.

{B0211222.1}

12. FirstMerit is a national banking association having an office located at 25 North Mill Street, New Castle, Pennsylvania, which is approximately forty (40) miles North of Pittsburgh. FirstMerit is the primary secured creditor of the Debtors and is owed in excess of $2,200,000 by the Debtors. FirstMerit does not have an office located in Dauphin County or anywhere within the jurisdiction of the courts of the Middle District of Pennsylvania.

13. Pursuant to the Loan and Security Agreement that the Debtors entered into with FirstMerit, the Debtors represent, warrant and covenant to FirstMerit, among other things, that their principal place of business is defined as follows:

Residence for Renal Care at Shadyside, Ltd.  
5511 Baum Boulevard  
Pittsburgh, PA 15232

Center for Renal Care at Shadyside, Ltd.  
440 Fairmount Street  
Pittsburgh, PA 15232.

See Paragraphs 11 (a) (xv) and 22 of the Loan and Security Agreement dated August 30, 2007 by and between Innovative Healthcare Properties, LLC, Center for Renal Care at Shadyside, Ltd., Residence for Renal Care at Shadyside, Ltd., Care First Management, LLC, J. Gregory Cauterucci, Sr., Phillip H. Krause, Robert K. Nealon, Victor J. Bierman III, David P. Leone, Bina Mehta, John Y. Kim, Louis J. Capozzi, Vincent E. Fisher and FirstMerit Bank, N.A. A true and correct copy of the Loan and Security Agreement is attached hereto, marked as Exhibit "B" and made a part hereof.

A. **VENUE IS NOT PROPER IN THE MIDDLE DISTRICT OF PENNSYLVANIA UNDER 28 U.S.C. § 1408 AND THE INTEREST OF JUSTICE AND THE CONVENIENCE OF THE PARTIES DICTATE THAT THE COURT TRANSFER THESE CASES.**

14. Venue in the Middle District of Pennsylvania is not proper in these cases under 28 U.S.C. § 1408 and the principles of both law and equity support the transfer of the Debtors' cases to the Western District of Pennsylvania. Rule 1014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and 28 U.S.C. § 1412 provide mechanisms for the transfer of a bankruptcy case to another venue.

15. 28 U.S.C. § 1412 dictates that "a district court may transfer a case or proceeding under Title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."[3]

16. Correspondingly, Bankruptcy Rule 1014(a)(1) provides that "if a petition is filed in a proper district, on timely motion of a party in interest, and after hearing on notice to the petitioners, the United States Trustee, and other entities as directed by the Court, the case may be transferred to any other district if the Court determines that the transfer is in the interest of justice or for the convenience of the parties."

17. Accordingly, there are two primary issues that must be considered by a court when considering a request to transfer venue: (i) the interest of justice, and (ii) convenience of the parties. *In re Midland Associates*, 121 B.R. 459 (Bankr. E.D.Pa. 1990).

    **i. Interest of Justice.**

18. The "interest of justice" criterion has been described as "an elusive term not easily amenable to definition." *In re Pinehaven Associates,* 132 B.R. 982, 990 (Bankr. E.D.N.Y. 1991). Moreover, this component "is a broad and flexible standard that must be applied on a case by case basis." *In re Eclair Bakery Ltd,* 255 B.R. 121, 141 (Bankr. S.D.N.Y. 2000). Accordingly, in determining whether the "interest of justice" supports the transfer of an action, a variety of factors may be considered, including "fairness" and the "integrity of the bankruptcy system." *Id.* at 142.

---

[3] The authority of a bankruptcy court to exercise a district court's power to transfer a case via 28 U.S.C. § 1412 arises from the district court's referral of the bankruptcy court pursuant to 28 U.S.C. § 157(a).

{B0211222.1}

### a. Forum Shopping and the Integrity of the Bankruptcy System.

19. The Debtors' blatant forum shopping dictates the transfer of the Debtors' bankruptcy cases in the "interest of justice." Courts have repeatedly found that forum shopping, either in regard to venue for bankruptcy cases or otherwise, is an "evil" that is disfavored by the federal courts. As noted by one bankruptcy court:

> Then there is the issue of forum shopping. How much deference should be given to forum selected primarily by the lawyers for the debtors, for their own convenience or remuneration? How much deference should be given to a debtors' concern that it get what it perceives to be a debtors' judge? Whenever a creditor raises the venue question, none at all. Forum shopping has never been favored by federal courts, and courts are quick to discern the evil in all its disguises. In bankruptcy, too often the tactic is masked by pious pronouncements about the debtor's right to select the most advantageous of several possible forums, in order to advance the prospects of reorganization. That rationale, however, should be taken with several grains of salt. Too many corporations with familiar household names are operating in bankruptcy under the name of some obscure subsidiary whose venue happens to coincide with either the debtor's or the debtor's lawyers perception of the most favorable judicial forum in which to operate.

*In re Abacus Broadcasting Corp.,* 154 B.R. 682, 668 (Bankr. W.D. Tex. 1993) (emphasis added).

20. Other courts have held that forum shopping is not in the interests of justice. *See, e.g., In re Jordan,* 313 B.R. 242 (Bankr. W.D. Tenn. 2004) ("The judicial outcomes of such venue motions ... should be based on a careful review and close scrutiny of the totality of the particular facts and circumstances of each case and consideration of basic fairness protections to allow the court to prevent inequitable abuses and unfair manipulative forum shopping by debtors in voluntary cases and petitioning creditors in involuntary cases."). Thus, the "interest of justice" would clearly not be furthered by permitting blatant forum shopping, a practice disfavored in federal courts and which impinges on the integrity of the bankruptcy system, to continue unchecked.

### b. Parties' Expectations.

21. Moreover, bankruptcy courts have previously found that the "expectations of the parties" should be considered when determining whether venue is appropriate. *See In re Washington,*

{B0211222.1}

6

Case 1:10-bk-05235-MDF    Doc 45    Filed 07/09/10    Entered 07/09/10 14:36:59    Desc
Main Document    Page 6 of 13

*Perito & Dubuc,* 154 B.R. 853 (Bankr. S.D.N.Y. 1993). In *Washington,* the court analyzed and determined venue, and ultimately transferred venue, in light of the "location" of the debtor's principal assets (accounts receivable) while performing a venue analysis in connection with the perfection of a security interest under the Uniform Commercial Code. Applying the parties' expectations to its venue analysis, the court held that "[t]he approach used in the U.C.C. context seems appropriate in the venue context as well because it is an approach which conforms to the expectations of the parties." *Id.* at 861.

22. With its sole business located in Pittsburgh, it is doubtful that any entity involved with these bankruptcy cases, other than Debtors' counsel, would "expect" that the Debtors would file bankruptcy in Harrisburg. Pittsburgh is the only logical choice. In fact, the Loan and Security Agreement executed by the Debtors and FirstMerit list the Debtors' principal place of business as:

| | |
|---|---|
| Residence for Renal Care at Shadyside, Ltd.<br>5511 Baum Boulevard<br>Pittsburgh, PA 15232 | Center for Renal Care at Shadyside, Ltd.<br>440 Fairmount Street<br>Pittsburgh, PA 15232. |

Despite having two separate addresses, the Debtors' facility is one facility that spans multiple property lots. The facility is located solely within the jurisdiction of the Western District of Pennsylvania.

### c. Interests of the Forum in the Matter.

23. Another factor considered by courts in deciding whether the "interest of justice" is met is whether either forum (the current or prospective) has an interest in seeing the bankruptcy adjudicated in its forum. *See, e.g., In re Enron Corp.,* 317 B.R. 629, 639 (Bankr. S.D.N.Y. *2004); TIG Ins. Co. v. Smolker,* 264 B.R. 661, 668 (Bankr. C.D. Cal. 2001). As shown above, Harrisburg's ties to the Debtors are practically non-existent. On the other hand, Pittsburgh has a significant interest in these bankruptcy cases. The Debtors' employees reside in Pittsburgh, along with a large number of

{B0211222.1}

7

Case 1:10-bk-05235-MDF    Doc 45    Filed 07/09/10    Entered 07/09/10 14:36:59    Desc
Main Document    Page 7 of 13

the Debtors' creditors. These bankruptcy proceedings will have a significant impact on those parties. Moreover, the Debtors are currently defendants in eleven (11) state court proceedings that have been filed in Allegheny County, which is within the jurisdiction of the Western District of Pennsylvania. As of the Petition Date, the Debtors have no pending litigation in any other county in Pennsylvania. This gives further validity to the fact that Pittsburgh has the most ties to the Debtors.

### d. Judicial Economy and Efficient Administration.

24. The Debtors' business operations are likely to have a substantial amount of legal proceedings, claims, and entanglements that will need to be handled during the administration of these bankruptcy cases. With respect to disputed debts and claims, the witnesses and documentary evidence necessary to handle any such disputed debts and claims are located in Pittsburgh. Virtually all ancillary actions connected with disputed debts and claims, will involve travel to Pittsburgh to interview and depose witnesses, engage in document production and review, and related pretrial preparation and discovery.

25. In addition to a waste of judicial resources, the necessary proceedings that will need to occur in this Court will result in a waste of the Debtors' resources. Requiring the Debtors' employees and executives to travel repeatedly from Pittsburgh to Harrisburg to serve as witnesses in, or otherwise appear or assist in, proceedings in these bankruptcy cases will be expensive and a needless addition of time, travel, and disruption to the Debtors' business.

26. Accordingly, a consideration of the "interest of justice", much like the analysis of the convenience of the parties, mandates a transfer of venue to the Western District of Pennsylvania.

### ii. Convenience of the Parties.

27. As noted by the Court of Appeals for the Second Circuit, "[t]he purpose of statutory venue requirements is to ensure that a case is filed in a forum that is convenient for the parties in

{B0211222.1}

interest." *United States of America* v. *Laird,* 412 F.2d 16, 20 (2d Cir. 1969). In determining the "convenience of the parties," the Bankruptcy Courts for the Western and Eastern Districts of Pennsylvania have considered the factors set out by the Fifth Circuit Court of Appeals in *In re Commonwealth* Oil *Refining Co.,* 596 F.2d 1239 (5th Cir. 1979). *See. e.g* . *In re Industrial Pollution Control, Inc.,* 137 B.R. 176, 181 (Bankr. W.D.Pa. 1992); *In re Midland Assoc.*, 121 B.R. 459, 460 (Bankr. E.D.Pa. 1990). The factors considered are:

    a.    The proximity of creditors of every kind to the court;

    b.    The proximity of the debtor to the court;

    c.    The proximity of the witnesses necessary to the administration of the estate;

    d.    The location of the assets; and

    e.    The economic administration of the estate.

28. An evaluation of all of these factors, as applied to the Debtors' bankruptcy cases, weighs in favor of transferring these cases to the Western District of Pennsylvania.

### a. Proximity of the Creditors to the Court.

29. The vast majority of the Debtors' creditors are located in or around the Western District of Pennsylvania.

30. The Debtors' largest secured creditor, FirstMerit, is located in New Castle, Pennsylvania, which is approximately forty (40) miles North of Pittsburgh and within the jurisdiction of the Western District of Pennsylvania. FirstMerit does not have an office or a branch near Harrisburg. Additionally, eight (8) of the Debtor, Residence for Renal Care's twenty (20) largest unsecured creditors are located in the Western District of Pennsylvania, as

{B0211222.1}

are eight (8) of the Debtor, Center for Renal Care's twenty (20) largest unsecured creditors. In total, sixteen (16) of the Debtors' combined largest unsecured creditors are located within the Western District of Pennsylvania.

31. Transferring these cases to the Western District of Pennsylvania would bring the vast majority of the creditors closer to these cases and make it easier for those creditors to participate in the bankruptcy proceedings.

32. Accordingly, this factor weighs significantly in favor of transferring these cases.

### b. Proximity of the Debtors and Proximity of the Witnesses Necessary to Administration of the Estates.

33. The Debtors operate in a single location, which is in Pittsburgh.

34. Accordingly, the principal place of business of the collective Debtors is clearly in Pittsburgh. The Debtors lack a substantive presence of any kind in Harrisburg. The Western District of Pennsylvania is closer by a large margin to every aspect of the Debtors' operations than the Middle District of Pennsylvania.

35. Moreover, in the Loan and Security Agreement that the Debtors entered into with FirstMerit, the Debtors represent, warrant and covenant to FirstMerit that their principal place of business is defined as follows:

| Residence for Renal Care at Shadyside, Ltd. | Center for Renal Care at Shadyside, Ltd. |
|---|---|
| 5511 Baum Boulevard | 440 Fairmount Street |
| Pittsburgh, PA 15232 | Pittsburgh, PA 15232. |

36. Additionally, the Debtors' employees who may be called upon to testify in this matter or otherwise appear at hearings are based out of the Debtors' single location, which is in Pittsburgh. Likewise, the location of the professionals employed by the Debtors to assist them in

{B0211222.1}

10

this case weighs in favor of transferring this case to the Western District of Pennsylvania. The Debtors have retained a financial consultant who is located in Pittsburgh.

37. Thus, both factors, the proximity of the Debtors and proximity of witnesses to the venue, weigh strongly in favor of transfer to the Western District of Pennsylvania.

### c. Location of the Debtors' Assets

38. 28 U.S.C. § 1408 provides that a proper venue for a case brought under Title 11 is where the Debtors' principal assets are located. Furthermore, this Court has stated that many courts have focused on one factor which they consider to "overwhelmingly compel transfer and that is where the principal asset of the debtor is located." *In re A&D Care, Inc.*, 86 B.R. 43 (Bankr.M.D.Pa. 1988) (Court transferred Chapter 11 case from Middle District of Pennsylvania to Western District of Pennsylvania because the debtor's principal asset was located in the Western District of Pennsylvania.).

39. Upon information and belief, the principal and only location of the Debtors' assets is in Pittsburgh. The Debtors' assets, real property, personalty, accounts receivable, and bank accounts are located in Pittsburgh.[4]

40. There is no indication that the Debtors have any significant assets in Harrisburg, or anywhere near Harrisburg for that matter. Thus, this factor also weighs in favor of a transfer of these cases.

---

[4] At the First Day Motions held by this Court on July 1, 2010, Debtors' Counsel stated that a basis for venue in this Court is that one or more business accounts of the Debtors' may be located in Harrisburg, Pennsylvania. Upon information and belief, all of the Debtors' bank accounts are with PNC Bank, which is headquartered in Pittsburgh, Pennsylvania. Moreover, upon information and belief, all of the transactions associated with the Debtors' bank accounts are performed at branches of PNC Bank located in or around the Pittsburgh region.
{B0211222.1}

11

#### d. Economic Administration of the Estate

41. Transferring the venue of the Debtors' cases to Pittsburgh will alleviate the considerable time and expense that will be incurred by both the Debtors and their creditors if forced to travel from Pittsburgh to Harrisburg. Additionally, the transfer of these cases will promote judicial economy, as the Debtors, their assets and a majority of their creditors are all located in Pittsburgh.

42. In light of the headquarters of the Debtors in Pittsburgh (and the increased proximity of the vast majority of the creditors to Pittsburgh) as opposed to Harrisburg, both the creditors and Debtors will have more efficient access to the proceedings if the cases are transferred to Pittsburgh. Accordingly, the costs to the creditors, the Debtors, and the estates, in terms of both time and money, will be significantly lower if these cases are transferred to the Western District of Pennsylvania.

### III. CONCLUSION

43. The foregoing demonstrates that venue in this district is improper. The convenience of the parties and the interest of justice require that these chapter 11 cases be transferred to the most appropriate venue, the Western District of Pennsylvania. To retain these cases in this Court would reward the blatant forum shopping engaged in by the Debtors while simultaneously hindering the abilities of the Debtors' creditors to effectively participate in the proceedings and increasing the costs of the administration of this bankruptcy.

44. Moreover, there can be no better case for the transfer of a bankruptcy case than the instant matter. These bankruptcy cases have no relationship to Harrisburg other than its registered address.

{B0211222.1}

WHEREFORE FirstMerit respectfully requests that the Court transfer the Debtors' cases to the Bankruptcy Court for the Western District of Pennsylvania.

<pre>
                                        BABST, CALLAND, CLEMENTS and
                                        ZOMNIR, P.C.

Dated: July 9, 2010         BY:    /s/ Erica L. Koehl_____
                                   David W. Ross, Esquire
                                   P.A. ID 62202
                                   Erica L. Koehl, Esquire
                                   P.A. ID 306829
                                   Two Gateway Center, 7th Floor
                                   Pittsburgh, PA  15222
                                   412-394-5400

                                   *Attorneys for FirstMerit Bank, N.A.*
</pre>

{B0211222.1}

13